The second case for this morning is Freelain v. Village of Oak Park and we will hear from you, Mr. Durd. Mr. Freelain is a 15-year veteran law enforcement officer who became the target of the Oak Park Village administration after taking FMLA leave for symptoms stemming from a Oak Park police sergeant's sexual harassment at work. Can you clarify a factual point for me? We have the 20-some days of leave that he takes that at least initially is classified as self-sick, so he's got to draw down his personal sick leave account. And then we have other leave that happens later, the seven weeks for the test. Does his first 20 days ever get changed to sick accident or is that just all along self? No, it's undisputed that he was never credited for those days. So he's never credited for that. So he has the 20 days that he drew down after his stress, etc., from the harassment. And what's your best evidence for the contention that treating those 20 days as requiring him to use sick leave for those 20 days was retaliatory, was a response to his use of FMLA leave? Well, I believe our best argument on that point is really sort of a pretextual argument. It's just objectively unreasonable. No, just tell me your best evidence. Don't give me your bottom line. Tell me your best evidence, please. Sure. Officer Freelain consistently reports his symptoms as being work-related. He submits a physician certification and a doctor's note saying that the cause of the symptoms is work-related. You've got to give me evidence about what the defendants are doing or saying. Sure. The defendants receive a physician's note saying that the cause of the symptoms is workplace stressors. So maybe I can clarify this too because I'm having trouble linking their decision to require him to take his personal sick leave with anything about FMLA. Now, if you had pleaded that this was retaliation for his complaint about Vardol, for example, that would be a different theory altogether. But I didn't find that theory in your argument. So, you know, where is it that they say, oh, gee, you know, before the summer, end of August and all of September, he's been an abusive user of FMLA or whatever they say. You know, how does it link to FMLA? Well, yes, admittedly, there are no comments prior to the sick leave issue regarding the use of FMLA. Those come later. I mean, we believe just based on the nature of this report to the village about the nature of his symptoms, we believe it was clearly work-related. He submitted a physician's note indicating so, and the village had no evidence to indicate otherwise. Now, counsel, that's just a contention that it was wrong as a matter of state law or as a matter of collective bargaining agreement. I'm worried, and the chief judge is obviously worried, about what makes, what in the evidence suggests that classifying this as unrelated to work, as leave unrelated to work, was retaliation for invoking the FMLA. Well, I'd make two points there. First, you know, and certainly we don't suggest that making a wrong employment decision is somehow tantamount to retaliation. You're not answering my question by pointing to evidence. That's what I'm asking you to do. So, you did mention later evidence, but of course, if they say six months later, you know, he's been a problem user of FMLA, or I forget the exact words, but there's some comment. That doesn't, for me, explain why there was an FMLA-related problem back in August and September. And as Judge Easterbrook says, if they misclassified, if they have a very stingy concept of what work-related reasons are, that may be one thing, but I don't see why that's a punishment for using FMLA. Well, we believe that reasonability is a big factor that plays into whether or not an action is retaliatory. Of course, an employer can do something that's wrong as long as it's not retaliatory. Retaliatory vis-a-vis what? I already told you. You know, if you had said vis-a-vis Vardal or vis-a-vis something else, I could get my head around it. Well, August 21st, he reports these symptoms, and it's at that point that he begins to take 20 or so days of FMLA leave. Do they tell him you can't? They give him the FMLA leave, as far as I understand, every time he asks for it. Yes, and that's undisputed. And we're not on appeal arguing an FMLA interference claim. What we're arguing is retaliation. And in our view, the retaliation here is once he goes on leave for a work-related injury or work-related symptoms, the village, in retaliatory fashion, decides not to give him work-related injury pay that he otherwise would have received. So how is that an FMLA claim rather than, as Judge Easterbrook suggests, a workers' comp or a collective bargaining claim? Well, retaliation takes many forms, and I think there's certainly evidence here to link the FMLA leave in August and September 2012 to the decision to classify his leave as non-work-related. So is it your theory that they say, okay, you can have FMLA leave, but they say, kind of sotto voce, they say, but we're going to make you pay for it. We're going to drain your sick leave account. Yes. But the statute guarantees only unpaid leave. Yes, right. That's why I'm asking about this being a collective bargaining. And again, we're not saying that he didn't receive the FMLA leave that he was entitled to. We're saying that in retaliation for that leave, the village took away his sick time. They didn't give him the work-related. I think you're not grasping the question. It's bugging me. I gather it's bugging my colleagues. The FMLA provides only for unpaid leave. In what sense is it retaliatory to say, okay, you've requested unpaid leave. We are granting unpaid leave. We are not going to pay you during your time on what is, as a matter of federal law, unpaid leave. How is that retaliation or a violation of the FMLA? It's retaliation because, contractually speaking, Mr. Freeland would have had a right to that pay. Any officer at the village who suffered a work-related injury would have been entitled to that pay. Yes, that sounds to me like a claim under state law or under the collective bargaining agreement. I'm just having trouble conceptualizing it as a claim under the FMLA, which provides only for unpaid leave. And certainly I agree that the FMLA only provides for unpaid leave, but our claim is retaliation. And we think that retaliation really can run the gambit of a variety of actions. I think you mean gamut. What's that? I think you mean gamut, not gambit. I apologize for misspeaking. But that's the 20 days in August and September. And then there's another seven weeks after that for which he's not on FMLA leave. Did they fully restore those sick days, I gather? In January of 2013, the sick balance was restored. That, however, did not cure several days during that time for which he received no pay whatsoever. How many days was it? I believe it was about three or four. I don't have the exact number. And he was paid for those days in January as part of the restoration? No, Your Honor, no. What the village says is that they credited the sick and vacation days they drained from his balance in October and November of 2012. I don't believe there was any evidence submitted by the village that they paid him for the days for which he went into a no pay situation. Is the plaintiff currently employed at Oak Park? At Oak Park? Yes. He is not. Okay. And given the restoration of so much of this time, apart from those August-September days, put those aside because of the problems we've been talking about, what would his damages be at this point? I think, you know, obviously it's the October-November time period. Yes, and anything later. Anything later. Well, of course, the few days for which he went without any pay whatsoever, and I think there's emotional distress damages for an employee who's basically put on a seven-week suspension. He's a father, a husband. He's going seven weeks without any pay whatsoever, basically getting to the point where it looks like he's. Well, he's getting a paycheck based on his sick leave balance, right? It's the three or four days. True, correct. Okay. But moving on to the other part of that administrative leave, obviously, is the psychological examination. And we, of course, don't dispute that police departments and employers in general have a right toward those types of examinations. Our contention in this case is simply that the evidence really suggests that this examination was pretextual. It was in retaliation for Mr. Freelane's protective action. You've got a police officer. As you might imagine, we see lots and lots of cases where people believe they've been mistreated by police officers out of control. And the law imposes pretty substantial duties on police departments to ensure that their officers are ready to deal with highly stressful situations on the street. And I guess I have some trouble with this claim, with this argument, not about the speed of the report, but about the thoroughness of it and the thoroughness of the examination, given that your client had self-reported that he was unable to deal with the stress of working as a police officer. What does his partners have to be able to count on him, right? Absolutely. And there's two things I'll say there. First, if you look at the symptoms he had, they were all related to one sergeant at work, to a sexual harassment situation. Stress, headaches, and I don't want to discount those in any way. Those are certainly important things for an employer to consider, especially when they're a police department. But when you consider them on a spectrum of seriousness, they're certainly, I would argue, towards the less serious end of the spectrum. But you are asking us, it seems I'm concerned, to micromanage the kind of fitness for duty examination that's required. I mean, I'm uncomfortable myself with the idea of looking at every single time somebody's asked to undergo such an exam and deciding whether, well, you know, the underlying problem was this serious and you should have done it quicker or you should have used a different kind of expert. I mean, that's really not what we do. Certainly, and you're right to be concerned about that. But when you look at the village's justification for this examination initially, it's not about public safety. It's not. It's about their investigation into his sexual harassment complaint, which involved only... Your own client is telling them, I can't work, right? I'm too stressed out to handle this. Yes. And you're conceding some exam is okay. You're just saying it was too much. That's where, if you want to save rebuttal time, you should think about that. Yeah, I'm running in my rebuttal time. But just on the examination, I'll close by saying this. If you look at their justification initially, it was this investigation. They said his symptoms seemed out of proportion to their investigation. There was nothing about public safety concerns. Their investigation involved an interview of only one witness, and that was Freelane himself. And to rely on such a deficient investigation really indicates that the village was not acting in good faith, did not have legitimate safety concerns. And I'll save the rest of my time for rebuttal. Thank you. Okay. That's fine. Ms. Coleman. Good morning. Amanda Coleman on behalf of Defendant Appley, Village of Oak Park. We heard Plaintiff Appellant Rasul Freelane's counsel come up and say that Plaintiff Appellant was the quote-unquote target of retaliation at the Village of Oak Park. Well, this so-called target, after he engaged in protected activity of taking FMLA leaves, which were all granted, and filing a charge of discrimination, had his performance evaluation scores increased. He received compensation, as Your Honors have pointed out, for all the time that he took on FMLA leave. But he was required that 20 days the village decided to require him to use sick leave for that. Correct, Your Honor. He had to use the 20 days of his sick leave for that time in August and September of 2012. And why was that classified as personal as opposed to job-related? That was pursuant to the village's medical role policy, which requires certain things to occur before something can be quote-unquote sick accident and work-related for which someone would get paid but not have deductions from their sick or vacation balances. Those things were not done by Plaintiff Appellant Freelane in this case. Can you give me just a quick example of what those things would be? Sure. There's an injury report form that has to be filled out and completed. There's a workers' compensation claim that would go through to the workers' compensation carrier. There's actually a medical facility that the Village of Oak Park pairs with and sends individuals to immediately if there's a work-related injury such as slip and fall or you pick up something that just throws your back out. And there's no evidence in the record that that actually occurred. Has that policy ever been used for more psychological sorts of injuries such as perhaps what he's alleging? I don't have that evidence in the record. That evidence is not in the record. I don't have it before me, Your Honor. Is it correct that the internal investigation talked only with the plaintiff? The internal investigation on the sexual harassment. Your Honor, that was done by an outside agency, and it was a report that was then given to the Village. But it's not part of what's being appealed. It's not part of the allegations and issues before us. It's in the briefs. It's talked about. I'm asking you whether it's factually correct that the investigator talked only to the plaintiff about this incident. I do not have that information in front of me, Your Honor. The report's in the record? The report is in the record. Okay, we'll check. The so-called target, again, was never disciplined. In addition, going back to the questions regarding the work-related injury, the September 11, 2012 letter memorandum that came from HR Director Frank Spataro to Mr. Freeling explained that we're looking at two different categories here for your absences. We're looking at self-sick and then we're looking at FMLA self-sick. There was no reference or explanation or information about sick accident, which would be with the workers' compensation issue and allow for leave, for pay without any kind of leave taken away from the balances. What's the difference between self-sick and FMLA self-sick? Just that if once your FMLA paperwork comes in, the time gets designated as FMLA leave, it then is called FMLA self-sick. I mean, I was wondering, you know, suppose this is hypothetical. Somebody has exhausted all of that person's sick leave, and now an FMLA qualifying event happens, actually, which may have happened to Officer Freeling. You know, his wife needs to have serious surgery or something. If it's FMLA self-sick, I would think at a minimum under the FMLA, there would be a right to leave without pay. Correct, Your Honor. And continue without insurance, et cetera. You would be kept as on leave even if you didn't still have the ability to be paid for it. Correct, Your Honor. It's just a matter of whether there's available sick balances, and under the FMLA that individual can use those sick balances. So the district court opinion here was correct. Considering the evidence as a whole, there is simply nothing that a reasonable jury can draw an inference from of retaliation based upon the ADA or the FMLA leaves of absence. The evidence in this case does not support this causal connection that plaintiff appellant is arguing. Appellant's strategy at the appellate court level is to present basically an overload of irrelevant or non-probative facts and argue that somehow those irrelevancies add up to relevant evidence of retaliation. There's some e-mails and so forth that are a little, I mean, particularly actually when his wife has the surgery that come across to me as somewhat snarky. If his wife is having cancer surgery, what's the problem? I mean, why isn't that obvious? He's telling them. He's notifying them what the reason for the leave is. Are we talking about the February 2014 e-mail from W. Chief Ambrose, Your Honor? Yes. Your Honor, so that was looked at by the district court and considered, and there is no evidence of any kind of retaliatory motive there. But I thought the district court's reading of it was, let's say, unsympathetic. And since this is on summary judgment, I didn't read this as a bona fide we are seeking direction, you know, needs to be more specific, i.e., he needs to attend to his wife or he must assist with the children. He's asking for eight hours off following the cancer surgery. Really? And the concern and the confusion was over whether this could be done as one day and whether it's talked about as FMLA and classified as FMLA for one day or if it would just be he's still off, no question of him being off and being able to be absent, but whether it would be classified as non-FMLA, but just he's using his paid leave that's available to him for that day. And it makes a difference whether he's spending the time in the hospital with his wife or taking care of the kids at home? The difference, Your Honor, would be whether it would be FMLA. No, actually not. I mean, he's entitled to use FMLA for either one of those. And that is, I agree with you legally, Your Honor. The question that Deputy Chief Ambrose was grappling with was why this was supposed to be classified as FMLA because he does not know the law like we do. I'm troubled by your argument that the police chief was not a relevant decision maker with respect to these matters. There's evidence that at least at the summary judgment stage which would allow the view that the chief was at least fed up or impatient with the plaintiff's use of leave. The chief is in charge. The chief is in charge of the police department, Your Honor. The alleged material adverse employment actions are things that the chief is not in charge of. No, they're in the charge of people that he is in charge of. He's in charge of supervising his department, Your Honor, but he is not in charge of classifying leaves as whether they're FMLA, self-sick, or come from someone with sick leave balances. There's no question that is HR Director Spataro. He's also not in charge of, in this situation, determining what level a fitness for duty exam was going to be assigned. That, again, was the human resources director, Frank Spataro. So let's say, let's imagine a private employer, and the evidence shows that the CEO is fed up with all these people taking FMLA leave, but there's no evidence that she's directly involved in any individual decision. But the HR director starts making decisions that wind up impairing FMLA rights or retaliating. You don't think the CEO's anti-FMLA animus would be relevant as evidence of the subordinates' motives? In that hypothetical, which is not the facts here, but in that hypothetical, I would say no. There's actually a case law that Plaintiff Fiscal Freelane has misstated in the brief, saying that there's that policymaker and decision makers, one's animus is not going to carry over to the second, unless there's additional facts, such as the second individual was pressured to. It ordinarily does not flow up, but you don't think it can flow down? It can flow down in certain situations, but that is also not the situation here. So I understand what Your Honor is saying about the evidence and the record. That evidence was related to two conversations that Freelane had with other individuals, not even Chief Tanksley. There was one in March of 2013. There was a conversation he had unrelated to FMLA or ADA. It was about a memorandum where a sergeant was saying, the chief is tired of you, I don't want you communicating with him, I think you're harassing him. That's not even evidence that can be considered at the summary judgment level because it's double hearsay that Freelane cannot get over. Double hearsay? There's double hearsay because it's Freelane talking to an officer who's saying, I heard Chief Tanksley say this. So we have alleged comment way down the line from Chief Tanksley. The person that Freelane spoke to was a superior officer in the department? A sergeant is a sergeant. Who is an agent of the department? Who would be legally an agent of the department. I think we're maybe confusing. I mean, if this had been a 1983 case, of course, we know that there's not vicarious liability. You've got to show that the person at the apex, whether it's the prison warden or the chief of police, was personally involved. But we're dealing with ADA and FMLA, which is a different type of liability. It goes to the village, basically, since that's the entity. And as I think maybe Judge Hamilton was getting at, you look at who's empowered to make these policies for the village. I think you've kind of gotten off on the wrong track, worrying about the chief of police's personal involvement here. There's still no causal connection. It doesn't need to be. It's the department. The department has taken these actions, and the defendants, as I understand it, are the village of Oak Park, and we're not here worrying about Sergeant Vardal, but those are the defendants. Correct, John. What do we do with the three or four days that, in the fall, while he's on unpaid administrative leave that he doesn't get paid for ever? There is no evidence in the record regarding three or four days of leave. The evidence shows that the seven weeks, all those days that were taken from the sick leave bank were reinstated to Officer Freelane's banks. There's been some deposition testimony from Officer Freelane, but there's been no evidence of actual days that are missing from that seven-week reinstatement from the fitness for duty. Officer Freelane says, I didn't get paid for three or four days, right? Correct. Sounds like evidence to me. It's his testimony, Your Honor, but he's not provided any kind of payroll records, any kind of memorandum. Is there contrary payroll evidence that would make that somehow beyond reasonable dispute? There is. There is. It's in the record, and there is an absence record showing all the days that were reinstated to Officer Freelane in the record. And if you want a record set, I can provide that to you in a second, but it is in the record. There's a memorandum that explains how many days went back to Officer Freelane. I mean, because he's obviously competent to testify about his own life, you know, which days did I go to work, how many days was I paid for. There's nothing wrong with that kind of testimony. And if the records seem to show something else, one might think perhaps there's a dispute of fact about it, but it's a little hard to say that he can't testify about his own activities and, for that matter, whether anybody paid him for them. The issue that is still, Plaintiff Freelane is unable to overcome, the causal causation, and also once the evidence was provided about the reasons for the actions pretext. And there's only an argument on pretext from Officer Freelane on the 20 days. And, again, it's belied by the record evidence, which explains the reason why those days are self-sick or FMLA self-sick and not sick accident. He has brought forward his own testimony saying he doesn't agree with that, but that's not enough to show that the actual reason given was a pretext to lie for an unlawful retaliation. Counsel, I've got to say, I guess what I find most troubling about this case is the day that Freelane returns, his doctor says he's good to go. He returns from FMLA leave, and he is immediately suspended without pay, right? No, Your Honor. He's put on administrative leave, and he receives pay during the entire time. So he's being treated as if he is sick, right? Correct? He's being treated as administrative leave. It's administrative leave, but he's chewing up his sick leave, right? He is. It was reinstated. I know it was reinstated, but we're talking here about, in essence, employer practices that arguably discourage, retaliate against the use of legal rights, right? I understand. And when he reports back for duty, he says, I'm ready to go, and his boss says, no, you're on sick leave indefinitely. Whenever our doctor happens to get around to doing the exam and sending us a report, I understand there's a reason for doing the exam. I have trouble saying, but you're still on sick leave. This is on your dime at this point. And that's why it was corrected, Your Honor. That's why that correction was made, and he was reinstated the days that were unfortunately taken away from him. But at the time, it's an extraordinarily stressful situation. He doesn't know ex-ante that the village is going to wake up and say, oh, we shouldn't have done this. It's a very difficult position to put someone in and could be seen as perhaps retaliation for taking the leave. The case law does not bear that out, Your Honor. There's case law that explains that while you're out on leave, if you're being paid, that that's not a material adverse employment action. And also, just to add one thing to the answer I was giving to you, Judge Hamilton, there's evidence in the record that that decision about the fitness for duty exam being required was made well before the absences were even designated as FMLA leave, September 11, 2012, pursuant to a normal HR practice. How would you address the problem in the Burlington Northern case the Supreme Court addressed where it was in essence being without a paycheck for about a month that was deemed sufficiently retaliatory? Correct, and that was distinguishable because that individual, as the court mentioned, was on suspension without pay, not receiving a paycheck, and they actually found it was really relevant that it was during the holiday period and this gentleman was sitting home without any pay coming in. That is not the case here. I assume the legal standard doesn't depend on the holiday season. I would assume so, too, Your Honor. But Freeland received a paycheck during the entire seven weeks.  All right. Thank you very much. Thank you. All right. Mr. Dierck, you still have a bit of time. Just briefly, Your Honors. You know, this case, as we've gone on today, it really isn't about the dollars and cents, although there certainly is a financial aspect to this case, but really this is a retaliation case, one that was really brought because of actions by the village to chill Mr. Freeland's protected activity. When you look at it under that standard, I think all of their actions that we've talked about today are retaliatory. They would dissuade a reasonable employee from engaging in protected activity. One of your claims, counsel, is that he didn't get to do some part-time work for a while, right, on the delayed approval. I've got to say, I'm not sure how you can pursue that without at least some comparative evidence. Well, I think, obviously, that that is not as strong as some of the other elements of the case, I would agree. And how did he have time to do part-time work, given all the family responsibilities at this point? I think that, you know, I don't think it was an overly strenuous position. I think it was a few hours a week to supplement his income. And it was an Oak Park police sergeant who ran the company, someone who the village was intimately familiar with, and it took him three months to approve a one-page document that required a simple signature. And that by itself, taken with all the other evidence, really suggests pretext and retaliation. And if there aren't any other questions, I think I've run out of time. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.